UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ BOATWRIGHT<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:16-cv-1184-KJN<br><br><br><br>ORDER |

Plaintiff Luz Boatwright seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from August 2, 2011, her alleged disability onset date, through the final administrative decision. (ECF No. 16.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 19.) Thereafter, plaintiff filed a reply brief. (ECF No. 20.)

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 9.)

1

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

I. BACKGROUND

Plaintiff was born on July 9, 1966, has a ninth grade education, can communicate in English, and previously worked as a hotel maid and dining room service worker. (Administrative Transcript ("AT") 25-26, 41, 66-67, 175, 177.)[2] On August 23, 2012, plaintiff applied for DIB, alleging that her disability began on August 2, 2011, and that she was disabled primarily due to a spinal injury, back problems, 5 bulging discs in the lower back, and depression. (AT 17, 148, 176.) After plaintiff's application was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on July 9, 2014, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified. (AT 17, 35-70.) The ALJ subsequently issued a decision dated October 7, 2014, determining that plaintiff had not been under a disability, as defined in the Act, from August 2, 2011, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 17-27.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 21, 2016. (AT 1-3.) Plaintiff then filed this action in federal district court on May 31, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly rejected the opinions of plaintiff's treating providers, Drs. Marasigan and Curiale; and (2) whether the ALJ failed to pose hypothetical questions based on those providers' assessed functional limitations.

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

2

## III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

## IV. DISCUSSION

### Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ determined that plaintiff met the

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the

insured status requirements of the Act for purposes of DIB through December 31, 2016. (AT 19.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since August 2, 2011, her alleged disability onset date. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and symptomatic nerve root irritation on the left. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 20.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). [She] is able to sit eight hours and stand/walk six hours in an eight-hour workday. [She] would require a single point cane to ambulate long distances (over ½ mile) and [on] uneven terrain. [She] is unable to climb ladders/ropes/scaffolds, but is able to occasionally stoop, crouch, crawl and kneel. [She] is able to work frequently above the shoulders.

(AT 22.)

At step four, the ALJ determined, based on the VE's testimony, that plaintiff was capable of performing her past relevant work as a hotel maid. (AT 25, 67-68.) In the alternative, the ALJ proceeded to step five, and found that, in light of plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (AT 26-27.) More specifically, based on the VE's testimony, the ALJ identified

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

the representative occupations of retail marker, cashier, and garment sorter, which were all light occupations with a specific vocational preparation ("SVP") level of 2 (involving simple work). (AT 27.)

Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from August 2, 2011, plaintiff's alleged disability onset date, through October 7, 2014, the date of the ALJ's decision. (AT 27.)

Plaintiff's Substantive Challenges to the Commissioner's Determinations

*Whether the ALJ improperly rejected the opinions of plaintiff's treating providers, Drs. Marasigan and Curiale*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency;

event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

### Dr. Marasigan

On May 29, 2014, plaintiff's primary care provider, Dr. Francisco Marasigan, completed a two-page form indicating, *inter alia*, that plaintiff could only lift and carry 10 pounds; stand/walk for 5 minutes or less at a time, for a total of less than 2 hours in an 8-hour workday; sit for less than 6 hours in an 8-hour workday; and could never climb, balance, stoop, kneel, crouch, or crawl. (AT 558-59.) In other words, according to Dr. Marasigan, plaintiff had a functional capacity of far less than sedentary work. As discussed below, the ALJ provided specific and legitimate reasons for rejecting Dr. Marasigan's conclusory and minimally supported opinion.

The ALJ properly relied on the opinion of consultative orthopedist Dr. David Osborne, who reviewed plaintiff's records and performed a personal examination on January 8, 2013. (AT 23-24, 406-12.) Dr. Osborne essentially opined that plaintiff was capable of performing light work with occasional postural restrictions. (AT 410-12.)[5] Because Dr. Osborne personally examined plaintiff and made independent clinical findings, his opinion was substantial evidence on which the ALJ was entitled to rely. Notably, Dr. Osborne's opinion was generally consistent with other opinions by treating and examining providers. See AT 24, 428, 554 (March 7, 2013 opinion by treating physical rehabilitation specialist Dr. Stephen Mann assessing limitations of lifting 25 pounds, occasional bending, light pushing and pulling, and no climbing ladders or

---

and (6) specialization. 20 C.F.R. § 404.1527.

[5] Dr. Osborne also opined that plaintiff must be permitted to "periodically alternate sitting and standing to relieve pain/discomfort." (AT 411.) Even assuming, without deciding, that the ALJ erred in failing to include such a limitation in the RFC, that error was harmless, because the VE testified that the three representative occupations identified by the ALJ at step five would all accommodate a sit/stand option. (AT 69.) See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

ramps); AT 451 (May 15, 2013 opinion by worker's compensation agreed medical examiner Dr. Marvin Lipton that plaintiff could return to work under the work restrictions recommended by Dr. Mann).[6] Furthermore, the state agency physicians who reviewed plaintiff's records likewise found plaintiff capable of essentially performing light work with occasional postural limitations. (AT 24, 78-80, 93-95.)

Additionally, the ALJ reasonably found that Dr. Marasigan's opinion was inconsistent with the extent of plaintiff's activities. (AT 21, 25.) For example, although Dr. Marasigan stated that plaintiff could only stand/walk for 5 minutes or less at a time (AT 559), plaintiff acknowledged at a June 12, 2012 deposition that she went out proselytizing as a Jehovah's Witness 10-15 times since the August 2, 2011 injury, going out for about an hour and a half. (AT 25, 447.) Additionally, plaintiff told the psychological examiner that she can do household chores, errands, shopping, driving, and cooking. (AT 21, 400.) Thus, the ALJ rationally concluded that plaintiff was not as limited as Dr. Marasigan suggested.

In light of the above, the court finds that the ALJ provided specific and legitimate reasons to discount Dr. Marasigan's opinion.[7]

### Dr. Curiale

On July 18, 2013, plaintiff's treating psychologist, Dr. Angela Curiale, completed a mental disorder questionnaire form. (AT 459-66.) According to Dr. Curiale, she treated plaintiff for about 3 months between December 12, 2012, and March 12, 2013. (AT 466.) Dr. Curiale described a panoply of mental symptoms, including depression, paranoid isolation, and insomnia; diagnosed plaintiff with major depression with psychotic features and posttraumatic stress

---

[6] Plaintiff correctly notes that Dr. Mann and Dr. Lipton at times referenced the fact that no accommodations and modifications were available in plaintiff's prior job and that she therefore could not return. However, those statements must be read in context—they were made in the course of plaintiff's worker's compensation case with respect to plaintiff's particular job at the Hyatt hotel, and do not suggest that plaintiff is unable to return to any hotel maid job or other work in the national economy. See 20 C.F.R. § 404.1504 (decisions and rules of other agencies and proceedings, such as worker's compensation, not binding on the Social Security Administration).

[7] Because the above-mentioned specific and legitimate reasons are sufficient, the court finds it unnecessary to consider the ALJ's additional reasons for discounting Dr. Marasigan's opinion.

disorder; and opined that plaintiff was "unable to be employed in the open job market at this time." (AT 462-66.)

As an initial matter, the ALJ gave Dr. Curiale's opinion as to employability little weight, because the ultimate question of disability is an issue reserved for the Commissioner. (AT 25.) See Allen v. Comm'r of Soc. Sec., 498 Fed. App'x 696, 696 (9th Cir. Nov. 19, 2012) (unpublished) (noting that "a treating physician's opinion on the availability of jobs and whether a claimant is disabled are opinions on issues reserved to the Commissioner" and "can never be entitled to controlling weight or given special significance"); McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2010) ("A treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information, but a treating physician ordinarily does not consult a vocational expert or have the expertise of one. An impairment is a purely medical condition. A disability is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity."). Indeed, although Dr. Curiale's report described several mental symptoms, the report did not assess any concrete mental limitations, and her final conclusion was an issue reserved for the Commissioner.

Nevertheless, to the extent that the ALJ also rejected any psychological opinions expressed in the report, the ALJ provided specific and legitimate reasons for doing so. The ALJ substantially relied on the opinion of consultative examining psychologist Dr. Jeremy Trimble, who personally examined plaintiff and opined that, although there was enough evidence to support a diagnosis of an adjustment disorder with depressed mood, that disorder did not impair plaintiff's ability to participate in activities of daily living or to be gainfully employed. (AT 398-403.) Dr. Trimble found that plaintiff was able to perform simple and repetitive tasks, as well as detailed and complex tasks; was able to maintain regular attendance, persistence, and pace; and was not limited in her ability to perform work activities on a consistent basis, perform work activities without additional or special supervision, complete a normal workday or workweek, accept instructions from supervisors, interact with others, and deal with the usual stresses encountered in competitive work. (AT 403.) Because Dr. Trimble personally examined plaintiff

and made independent clinical findings, his opinion constituted substantial evidence on which the ALJ was entitled to rely.

As the ALJ also observed, Dr. Trimble's opinion is more consistent with the record and plaintiff's own testimony. (AT 23.) At the July 9, 2014 hearing, plaintiff acknowledged that she was not even receiving any mental health treatment and had stopped seeing Dr. Curiale. (AT 65-66 ["Well, she helped me a lot to think and some of the things that I - - that I - - I know that - - it's only me that can fix some of the thinking that I have."].) Plaintiff's testimony and lack of treatment are not consistent with the type of pervasive mental impairments described by Dr. Curiale.

Therefore, even if the court may have weighed the evidence differently, the court concludes that the ALJ provided specific and legitimate reasons for discounting Dr. Curiale's opinion.

*Whether the ALJ failed to pose hypothetical questions based on the treating providers' assessed functional limitations*

In light of the court's conclusion that the ALJ properly rejected the assessed functional limitations of the above-mentioned treating providers, the ALJ was not required to pose such corresponding hypotheticals or incorporate the limitations into the RFC.

V.  CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.

////

////

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: April 10, 2017

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE